## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS,
## AT KANSAS CITY, KANSAS

| | | |
|---|---|---|
| NICOLE CHAPELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. <u>10-CV-2603 WEB</u>/KMH |
| | ) | |
| UNITED PARCEL SERVICE, INC., | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S COMPLAINT

1.   Plaintiff, Ms. Nicole Chapell, by and through the undersigned legal counsel, alleges as follows.  All allegations in this complaint are based upon the investigation of counsel, except the allegations pertaining to the plaintiff, which are based upon plaintiff's personal knowledge. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.  Additionally, once the discovery process is underway, the roles of other unknown conspirators and participants in the wrongdoing identified herein will likely be revealed, and plaintiff will seek leave to amend this complaint to add new parties and/or new claims.

### NATURE OF THE ACTION AND SUMMARY OF ALLEGATIONS

2.   Plaintiff brings this action against defendant, United Parcel Service, Inc. ("UPS" or the "Company"), for discrimination and other unlawful conduct in employment, as a result of defendant: a) maintaining a *de facto* policy, pattern and practice of requiring employees such as plaintiff to provide a "full" or "100%" medical release, without restrictions, before permitting them to return to duty following a medical leave of absence; b) failing and/or refusing to engage in the required interactive process, and/or refusing to engage in the interactive process in good

faith, to identify reasonable accommodations for those employees such as plaintiff who attempt to return to work following an absence due to medical treatment or a medical condition, as required under the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. Sect. 12101 *et seq.* ("ADA"); c) failing and refusing to reinstate permanently disabled employees in a position that will effectively accommodate their medical restrictions without imposing an undue hardship on UPS; and, d) failing and refusing to permit employees such as plaintiff who have filed disability discrimination claims to return to work, in retaliation for having exercised their rights to seek the protection(s) of the federal civil rights statutes.

3.   Defendant is a federal contractor doing business with the United States government. By virtue of this status, UPS is required to comply with the Rehabilitation Act of 1973, as amended, 29 U.S.C. 701 *et seq.* (the "Rehab Act"), to correct unlawful employment practices on the basis of disability, including the statutory mandate to provide reasonable accommodations to individuals with disabilities.  At all times relevant to the factual claims which form the basis for this suit, defendant has been subject to the requirements of the Rehab Act.  The Rehab Act requires the defendant to engage in an interactive process with its employees to identify and agree upon either: 1) a reasonable accommodation to allow the employee to return to productive employment while performing the essential functions of his or her former job; or, 2) another vacant position.  The Company's policy requires it to violate its duty to persons seeking accommodations which is to engage in the interactive process required under the ADA and the Rehab Act.  UPS is required by law to engage in the interactive process in order to identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations.

2

4.   The Company does not have a practice of providing employees absent from work due to an injury with other work as a required accommodation; at most, on a case by case basis, UPS provides temporary light duty work only to those individuals who have an estimated return to full duty date within thirty (30) days.  UPS' policy denies effective accommodations, both to individuals whose disabilities are chronic or long-term, as well as to those individuals whose impairments UPS perceives or regards as likely to be chronic or long-term.  When the Company has information sufficient to put it on notice that the employee might have a long-term or chronic disability or impairment, by policy, it does not engage in the required interactive process. Instead, UPS uniformly asks the employee to have a physician complete a written report and to have the doctor submit the completed form directly to UPS.  Next, UPS employees review the form, and on the basis of the content of the form, UPS makes a decision as to whether it believes the individual requesting the accommodation is a "qualified individual with a disability" as a matter of law, without ever questioning the meaning of the content of the form, and without any communication directly with the individual on whose behalf the accommodation request was made.

5.   The only actions UPS takes when it receives notice that an individual may have a disability and has requested, or is apparently in need of, an accommodation is to send the individual a form for a doctor to fill out and return, and then to send back a form letter to the individual stating that the request is denied.  The interactive process requires UPS to seek information directly from an employee, such as Ms. Chapell, regarding his or her relevant education, skills, abilities, and limitations or restrictions, and whether the individual's major life activities are substantially impaired by the disability or impairment.  UPS has failed to do so. The Company's actions and failures and refusals to act are in violation of the ADA's and the

Rehab Act's prohibition against disability discrimination and defendant's affirmative obligation to accommodate the known disabilities of plaintiff and others like her.

6.   Plaintiff further alleges that defendant is liable under the ADA, which: 1) prohibits discrimination against any qualified individual with a disability by an employer, *inter alia*, because of the individual's disability, record of disability, or perceived disability; 2) requires the employer to provide reasonable accommodations including reassignment to vacant positions, unless doing so would impose an undue hardship on the business; and, 3) prohibits retaliation against any individual who has engaged in protected activity under the statute.  Defendant has a codified practice for processing requests for accommodation in order to return to work, which when applied as written, constitutes a *per se* violation of the defendant's duty to engage with the employee, such as Ms. Chapell, in the good faith interactive process to identify reasonable accommodations under the ADA.

7.   UPS does not engage in the interactive process in good faith.  Defendant's written policy, the "ADA Compliance Program" (the "Program"), provides a multi-step process which managers are directed to apply to individuals who seek to return to work following an injury or medical leave.  Under the Program, after an employee notifies the Company that he or she has a physical or mental impairment and requests an accommodation, the Company's medical officer (usually a nurse) first gathers medical information from the employee's doctor on a form provided by the Company.  The defendant then makes a legal judgment as to whether the person making the request is a "qualified individual with a disability" under the ADA.  Only when UPS decides that the person has a legally "qualifying disability," will the Company even superficially engage in the interactive process to determine whether an accommodation is "warranted or feasible."  Yet, in Ms. Chapell's situation, UPS has refused to:  a) allow her to demonstrate or

determine whether or not she is a qualified individual with a disability who can perform the essential functions of her last job and/or a job she desires and is qualified for with or without an accommodation; b) consider her requests for an accommodation; c) determine whether a reasonable accommodation could be provided for her; and, d) make an individualized assessment of her actual abilities.  Plaintiff's injuries have resulted in a substantial impairment of one or more major life activities; furthermore, by virtue of defendant's unlawful conduct, UPS regards Ms. Chapell as having a disability.

8.  UPS' job descriptions uniformly falsely represent that the ability to lift seventy (70) pounds is an essential function of nearly every bargaining unit job.  The Company's job descriptions for bargaining unit positions are designed and intended to further the discriminatory practices of UPS by including as "essential duties" of these positions activities which UPS knows in practice are rarely, if ever, required to be performed by any single individual without assistance and which are not "essential functions" as defined under law.

9.  The Company also has a policy or practice of refusing to reinstate individuals, regardless of their present disability status (i.e., whether the person is or ever was a qualified individual with a disability under the law and/or whether the person requests or requires any accommodation), in retaliation for exercising their rights under the ADA.  Defendant has not only refused to reassign plaintiff to a vacant funded position as an accommodation or otherwise, but also told her she cannot return to work as result of her injury.

10.  UPS is a $30 billion-plus corporation, one of the world's largest private mail carriers with nearly 400,000 (four-hundred thousand) employees worldwide, and the 4th largest private employer in the United States, with thousands of feeder drivers.  When any UPS employee, such as Ms. Chapell, attempts to return to work following an accident or a medical leave of absence

and notifies the Company of this, UPS requires as a routine policy and practice that this employee obtain a full 100% medical release prior to any reinstatement with the Company.  UPS does in fact have positions available within the company which could accommodate plaintiff and others like her.  In the absence of the submission of a full medical release, medically restricted employees may be allowed to temporarily work in the Company's "light-duty" ("temporary alternate work" or "TAW") program, which is less physically challenging and may comport with their restrictions and capabilities.  However, the TAW program is only rehabilitative in nature and, in fact, injured and medically restricted employees who have a limited prospect of full recovery (i.e., those whose restrictions are expected to persist for more than thirty (30) days) are ineligible to participate in the TAW program.

11.  UPS not only denies permanently disabled and/or restricted employees engagement in the interactive process to determine a reasonable accommodation for them as mandated under the ADA, but, as a *de facto* policy, pattern and practice, denies permanently disabled and/or restricted employees access to other less physically demanding work on a permanent basis within the Company.  This policy, pattern and practice of non-interaction, bad faith, non-accommodation and retaliation by UPS on the basis of disability status constitutes a *per se* violation of the ADA.  UPS arbitrarily and unilaterally denominates such permanently disabled and/or restricted employees who attempt to return to work from medical leave without a full medical release as "inactive" employees, as a pretext for violating their rights, and routinely refuses to engage them in the interactive process and denies them reasonable accommodations in violation of the ADA.

12.   Plaintiff alleges that: a) she sustained an injury during the course of her employment with UPS and for which she could exercise her rights under the ADA; b) UPS had knowledge of this injury and her claim; and, c) UPS terminated Mr. Chapell's employment as a result of this.

## JURISDICTION AND VENUE

13.   This Court has jurisdiction over the federal question subject matter of this civil rights action pursuant to 28 U.S.C. Sect. 1331, the ADA.

14.   This Court has personal jurisdiction over defendant because the Company systematically and continuously engages in substantial interstate commercial conduct and business activity in Kansas and the case arises out of UPS' unlawful conduct within this State.

15.   Plaintiff has complied with all conditions precedent to filing suit under the ADA, 42 U.S.C. Sect. 12117(a) and 42 U.S.C. Sect. 2000e-5(f)(1) and (3).   Plaintiff filed a charge of employment discrimination based on disability, retaliation, failure to accommodate, policy or practice, age, race, and sex with the Equal Employment Opportunity Commission ("EEOC") on or about August 12, 2009.   Plaintiff received a Dismissal and Notice of Rights ("Notice") from the EEOC on or about August 14, 2010, which Notice was dated August 11, 2010.   A copy of the Notice is attached hereto as ***Exhibit A*** and incorporated herein by reference as if fully set forth. This complaint is filed within 90 days of the receipt, as well as the date, of the Notice.

16.   Venue is proper in this Court pursuant to 28 U.S.C. Sect. 1391(b) and (c).   The unlawful employment practices set forth herein occurred and continue to occur in and around Lenexa, Kansas, where plaintiff resides, where plaintiff worked, where the discrimination and the damages occurred, and where the unlawful employment policies and practices remain in effect in continuous, systemic violation of said statutes and law.

## **PARTIES**

17.  Plaintiff, Ms. Nicole Chapell ("Ms. Chapell"), is a 40 year-old African American female and a resident of the State of Kansas.  Plaintiff was hired by UPS in or around January 1990 and, up to and until the time of the acts and conduct at issue, was continuously employed by the Company at its Lenexa, Kansas facility.

18.  Plaintiff was seriously injured on or about October 27, 2007, during a vehicular accident while employed as a full time at UPS.  Ms. Chapell's injuries from said accident resulted in a substantial impairment of a number of major life activities for her, including: walking, running, standing, sleeping, lifting, and working.  After her injury, Ms. Chapell sought medical treatment and care.

19.  On September 18, 2008, UPS forced Ms. Chapell to be examined by a physician; thereafter, on October 15, 2008, a Dr. Armstrong placed restrictions on Ms. Chapell.  When Ms. Chapell notified UPS of these restrictions, consistent with defendant's unlawful policies and practices, she was told that she could not return to work.  Since that time, Ms. Chapell has repeatedly and continuously requested to return to work with reasonable accommodations and was refused.

20.  Although Ms. Chapell was among the most-senior and tenured of all full-time UPS employees in her district and consistently demonstrated above-average productivity in her work, as part of its continuous and ongoing 100% release policy, UPS has failed and refused to allow Ms. Chapell to return to work (in any capacity), consider her requests for an accommodation, and determine whether she could perform any other jobs at UPS, as well as engaged in a variety of other flagrantly unlawful, dilatory and bad faith measures in response to Ms. Chapell's situation.

21.  Consequently, in addition to being unlawfully subjected to and forced to endure great anxiety, humiliation, and emotional distress, among other things, as a direct result of defendant's unlawful discriminatory and retaliatory conduct, Ms. Chapell has been unlawfully refused the ability to return to work, in any capacity; and, as such, she has been unlawfully denied past and future pay and related benefits and made to suffer a variety of other attendant damages.

22.  Defendant UPS is a Delaware corporation, having corporate headquarters located at 55 Glenlake Parkway, NE, Atlanta, Georgia 30328.  At all relevant times, UPS has continuously been an employer, a person, and a covered entity within the meaning of 42 U.S.C. Sect. 12111(2), (5) and (7).

## CLAIMS

### FIRST CLAIM:

### Violation of the Americans with Disabilities Act of 1990, as Amended, 42 U.S.C. Sect. 12101 *et seq*.

23.  Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

24.  As a result of the unlawful policy, pattern, practice, and conduct of Defendant UPS, by and through and in concert with its individual managers and other employees, as described herein, plaintiff has suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out of pocket expenses, interest, mental and emotional distress, and reasonable attorneys' fees, the exact amount of which will be determined at trial.

### SECOND CLAIM:

### Violation of the Rehabilitation Act of 1973, as Amended, 29 U.S.C. Sect. 701 *et seq*.

25.  Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

9

26. As a result of the unlawful policy, pattern, practice, and conduct of Defendant UPS, by and through and in concert with its individual managers and other employees, as described herein, plaintiff has suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out of pocket expenses, interest, mental and emotional distress, and reasonable attorneys' fees, the exact amount of which will be determined at trial.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

i)   A permanent injunction be granted enjoining defendant, its officers, directors, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with them, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA and the Rehab Act;

ii)   Defendant be ordered to institute and implement, and individual members of defendant to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities for persons with present, past, or perceived disabilities;

iii)  Defendant be ordered to make plaintiff whole by providing appropriate back pay and benefits with prejudgment interest, in amounts to be proved at trial;

iv)  Defendant be ordered to remove and expunge, or cause to be removed or expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from plaintiff's record(s) of employment;

v)   Plaintiff be awarded extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to the Federal Rules of Civil Procedure;

vi)  Plaintiff be awarded all restitutionary and/or remedial relief;

vii) Plaintiff be awarded punitive damages, pre-judgment interest and post-judgment interest, as well as her reasonable attorneys' fees, expert witness fees and other costs; and,

viii)  Plaintiff be awarded such other legal and equitable relief as the Court deems appropriate and just.

**A jury trial is demanded as to all issues triable to a jury.**

**Plaintiff respectfully requests that this action be assigned to the Kansas City Division, United States District Court for the District of Kansas**

Respectfully submitted,

MULLINS & BAYLARD, LLC.

*/s/ Daniel J. Baylard*
DANIEL J. BAYLARD # 78057
2008 NW South Outer Rd.
Blue Springs, MO 64015
Telephone No.: 816-463-3010
Fax No.: 816-463-2708
dan@mullinsbaylard.com

ATTORNEY FOR PLAINTIFF